IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHRISTOPHER CLAY, | § | |
| | § | No. 8, 2016 |
| Defendant Below, | § | |
| Appellant/Cross-Appellee, | § | Court Below: Superior Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | ID No. 1408007714A (S) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee/Cross-Appellant. | § | |
| | § | |
| | § | |

Submitted: April 12, 2017
Decided: June 1, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

Upon appeal from the Superior Court. **AFFIRMED in part, REVERSED in part**.

Michael W. Andrew, Esquire, Law Office of Mooney & Andrew, P.A., Georgetown, Delaware, for Appellant/Cross-Appellee, Christopher Clay.

Kathryn J. Garrison, Esquire, Delaware Department of Justice, Georgetown, Delaware, for Appellee/Cross-Appellant, State of Delaware.

**VAUGHN**, Justice:

# I.   INTRODUCTION

Defendant-below/Appellant Christopher Clay appeals from a Superior Court jury verdict finding him guilty of Robbery in the First Degree, Possession of a Firearm During the Commission of a Felony, Tampering with Physical Evidence, Conspiracy in the Second Degree, and Resisting Arrest.   He asserts three claims on appeal.   First, he claims that the trial court abused its discretion by denying his motion to sever his trial from the trial of his co-defendants.   Second, he claims that the trial court erred by denying his motion for judgment of acquittal on all charges. Finally, he claims that the trial court erred by finding the police possessed a reasonable, articulable suspicion to seize him and probable cause to arrest him.   On cross-appeal, the State claims that the Superior Court abused its discretion by requiring the State to provide the defendant with a redacted copy of a Department of Justice intake document and a copy of the prosecutor's notes from witness interviews under Superior Court Criminal Rule 26.2.

For the reasons which follow, we find that the trial court abused its discretion when it denied Clay's motion for judgment of acquittal on the Tampering with Physical Evidence charge, but reject his remaining claims.   We also find that the trial court erred by requiring the State to provide a copy of the Department of Justice's intake document and copies of the prosecutor's notes under Rule 26.2.

1

The judgment of the Superior Court is, therefore, affirmed in part and reversed in part.

## II. FACTS AND PROCEDURAL HISTORY

On August 9, 2014, an employee of the Dollar General store in Georgetown, Delaware was taking a register till to her office shortly before 9:00 p.m. As she entered her office, a man wearing a black hat and a t-shirt that said "Security" on the back approached her in her office while displaying a black handgun. He ordered her to give him the money from the register till she had and another till that was in the office. After she did so, he told her to get on the ground. The man then exited the store and the employee called the police.

Shortly after the robbery occurred, Corporal Joel Diaz of the Georgetown Police Department observed three black males run across the street. Corporal Diaz testified that his attention was initially drawn to the men because a series of robberies had recently taken place in the area. As Corporal Diaz continued to observe the men, a call came over his radio that a robbery had just taken place at the Dollar General store, which was a quarter of a mile away from his location. The radio call described the suspect as a black male dressed in all black and possibly armed with a handgun. Corporal Diaz realized that one of the three men that he was observing was dressed in all black. The officer approached the men, rolled down his window and asked them to stop. At first, the men ignored him, but when Corporal Diaz

stopped and exited his vehicle, one of the men, later identified as Christopher Clay, ran. Corporal Diaz radioed to other officers to pursue Clay and ordered the other two men, later identified as Maurice C. Land and Booker T. Martin, to stop.

Corporal Diaz and another Georgetown Police officer, Officer Derrick Calloway, were eventually able to detain Land and Martin. As Land was getting on the ground, he removed his shirt, which was black with "Security" written across the back in yellow letters. The officers also found a black baseball cap on the sidewalk near where Land had been standing. At the time of his arrest, Land had a latex glove and $81 in cash on his person. Martin had $897 in cash in his pocket in three bundles that were folded and organized by denomination.

While Corporal Diaz and Officer Calloway were with Land and Martin, Officer John Wilson was responding to Corporal Diaz's call to pursue Clay. Officer Wilson saw Clay running in the opposite direction of his car. He exited his vehicle and began chasing Clay on foot. Clay continued to run, and Officer Wilson observed him raise his hand into the air. Officer Wilson testified:

> I didn't know if [Clay] was going to run like he was going
> to turn or if he was throwing something. And I thought -
> - I did think I saw something leave his hand, but the lights
> are - - it was dark; my overheads on my police car are on;
> everything's flashing.[1]

---

[1] App. to Appellee's Answering Br. at 57.

Clay eventually got into a parked vehicle, and Officer Wilson ordered him out of the vehicle at gunpoint. Clay had $280 in cash in his pocket, folded and organized by denomination, and $1.17 in change. Officers later recovered a black handgun on the opposite side of a fence near where Officer Wilson observed Clay making a throwing motion.

Security footage from the Dollar General store showed Clay entering the store with Land shortly before 9:00 p.m. Land went to the back of the store and into the office, where surveillance cameras recorded him putting on a clear glove and taking money out of an employee's wallet. When the employee entered the office, Land pointed a handgun at her and demanded the money from the register tills. He then made her get on the ground, and he left the office. As Land was in the back of the store, Clay placed several items on the counter. Four seconds after Land left the store, Clay followed without purchasing any of those items.

On November 10, 2014, Clay was indicted on charges of Robbery in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), Aggravated Menacing, Conspiracy in the Second Degree, Possession of a Firearm by a Person Prohibited ("PFBPP"), Possession of Ammunition by a Person Prohibited ("PABPP"), Receiving a Stolen Firearm, Tampering with Physical Evidence, and Resisting Arrest. The Superior Court scheduled a joint trial for Clay and his two co-defendants. Before trial, Clay filed a motion to suppress

4

evidence.  After a hearing, the Superior Court denied Clay's motion.  Clay filed motions to sever his case from Land and Martin and to sever his Person Prohibited charges.  The court granted Clay's request to sever the charges, but denied his request to sever his trial from his co-defendants.  The State then filed an amended indictment charging Clay with Robbery in the First Degree, PFDCF, Conspiracy in the Second Degree, Tampering with Physical Evidence, and Resisting Arrest.  Clay filed another motion to suppress which was also denied following a hearing.

Trial went forward and at the conclusion of the State's case, Clay moved for judgment of acquittal on all charges.  The Superior Court denied Clay's motion, and at the end of the trial, the jury found Clay guilty of Robbery in the First Degree, PFDCF, Tampering with Physical Evidence, Conspiracy in the Second Degree, and Resisting Arrest.  Clay was sentenced to forty years and six months of Level V incarceration followed by probation.  He then filed a notice of appeal with this Court and the State filed its notice of cross-appeal.

### III.   DISCUSSION

**A. The Trial Court Did Not Abuse its Discretion by Denying Clay's Motion to Sever His Trial from the Trial of his Co-defendants**

Clay's first claim is that the trial court abused its discretion by denying his motion to sever his trial from his co-defendants' trial.  Motions to sever a defendant's trial from the trial of co-defendants "lie in the sound discretion of the trial court and will not be overturned, absent a showing of prejudice by the

5

defendant."[2] This Court "review[s] such motions to determine only if, under the specific facts and circumstances of the case before us, the trial court abused its discretion in denying the motion."[3]

> As a general rule, the factors to be considered when determining whether a motion for a separate trial should be granted are: [1] problems involving co-defendant's extra-judicial statements; [2] an absence of substantial independent competent evidence of the movant's guilt; [3] antagonistic defenses as between the co-defendant and the movant; and [4] difficulty in segregating the State's evidence as between the co-defendant and the movant.[4]

Clay contends that the second and fourth factors are applicable. He claims that the State did not offer substantial independent competent evidence of his guilt, and that the jury had difficulty segregating the evidence between Clay and his co-defendant, Land. Both of Clay's claims lack merit.

The State presented evidence against Clay at the joint trial that would have been admissible against Clay had he been tried separately from Land. The video surveillance from the Dollar General store showed Clay entering the store with Land and leaving the store just after Land without purchasing the items he had placed on the counter. A police officer also saw Clay walking across the street with Land shortly after the robbery, and when the officer approached the men, Clay ran. Clay

---

[2] *Skinner v. State*, 575 A.2d 1108, 1119 (Del. 1990).
[3] *Floudiotis v. State*, 726 A.2d 1196, 1210 (Del. 1999).
[4] *Manley v. State*, 709 A.2d 643, 652 (Del. 1998).

continued to run from a second officer, who observed Clay throw his hands into the air as though he was throwing something. Officers later found a gun near where the officer made this observation. Clay also does not dispute the fact that evidence that Land committed the robbery would still be admissible at Clay's trial had his motion to sever been granted. This evidence collectively constitutes substantial independent competent evidence of Clay's guilt that is attributable only to Clay, and therefore, Clay did not suffer any prejudice because of the joint trial. The record reflects that the Superior Court appropriately exercised its discretion in denying Clay's motion to sever his trial.

### B. The Trial Court Erred by Denying Clay's Motion for Judgment of Acquittal as to the Tampering with Physical Evidence Charge

Clay contends that the trial court erred by denying his motion for judgment of acquittal because the State failed to produce sufficient evidence to establish beyond a reasonable doubt that Clay was guilty of the offenses of Robbery in the First Degree, PFDCF, Conspiracy in the Second Degree, and Tampering with Physical Evidence. This Court reviews an appeal from the denial of a motion for judgment of acquittal *de novo*.[5] Specifically, this court examines "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all the elements of the crime."[6] We

---

[5] *Cline v. State,* 720 A.2d 891, 892 (Del. 1998).
[6] *Id.*

conclude that the trial court did err in denying Clay's motion for judgment of acquittal as to the tampering charge, but did not err in denying the motion as to the remaining charges.

**i. Accomplice Liability for Robbery in the First Degree and PFDCF**

Clay argues that the State did not produce sufficient evidence to establish his liability as an accomplice on the first degree robbery charge. Specifically, Clay argues that the State failed to establish that Clay and Land had a prior ongoing relationship, or that Clay and Land came together at any point prior to being at the Dollar General on the night of the robbery. Clay also contends that he cannot be held liable as an accomplice as to the PFDCF charge because the State did not present evidence that Clay knew that Land possessed a firearm during the robbery. We reject these contentions.

An individual is liable for the conduct of another when "[i]ntending to promote or facilitate the commission of the offense the person . . . [a]ids, counsels or agrees or attempts to aid the other person in planning or committing [the offense]."[7] While mere presence at the scene of a crime is not sufficient to prove accomplice liability, "a simple word or gesture may be enough" to show that an individual "actively encouraged the principal to commit the crime."[8] Such

---

[7] 11 *Del. C.* § 271(2)(b).
[8] *Dalton v. State*, 252 A.2d 104, 105 (Del. 1969).

encouragement must occur prior to or during the other person's commission of the crime.[9]

At trial, the State presented a video showing Clay enter the Dollar General in front of Land, and showing him exit the store seconds after Land without purchasing the items he had placed on the counter. The State also presented the following evidence: police saw Clay walking with Land and Martin shortly after the robbery; Clay ran when an officer attempted to stop the men; Clay continued to run from a second police officer; Clay made a throwing motion as he was running; and police later recovered a gun near the area where Clay was observed making the throwing motion. Viewing this evidence in the light most favorable to the State, a rational juror could find that Clay intended to facilitate the commission of the robbery by being Land's "lookout" while he was in the back of the store, and that Clay knew that Land was armed.

### ii. Conspiracy in the Second Degree

Clay asserts that the State did not establish the elements of conspiracy because the State did not offer evidence to show that Land and Clay planned to commit a robbery nor did the State offer any evidence that the pair knew each other. Under 11 *Del. C.* § 512,

> A person is guilty of conspiracy in the second degree when, intending to promote or facilitate the commission of

---

[9] *Id.*

a felony, the person: (1) Agrees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt or solicitation to commit the felony; or (2) Agrees to aid another person or persons in the planning or commission of the felony or an attempt or solicitation to commit the felony; and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy.

For the reasons given above in connection with accomplice liability, we are satisfied that when the evidence is viewed in the light most favorable to the State, a rational juror could find that Clay conspired with Land to commit the robbery and assisted Land by acting as his lookout.

### iii. Tampering with Physical Evidence

Clay contends that no rational juror could find him guilty of Tampering with Physical Evidence because the evidence in this case, the gun, was immediately retrievable and therefore was not successfully suppressed. We agree. In pertinent part, 11 *Del. C.* § 1269 states:

A person in guilty of physical evidence when . . . [b]elieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent its production or use, the person suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person.

As this Court stated in *Harris v. State*, "11 *Del. C.* § 1269 criminalizes neither inchoate tampering nor tampering with items, but, rather, *successful* suppression of

10

evidence."[10]    Where evidence is immediately retrievable by the police, an individual has failed to actually suppress the evidence, and is therefore not guilty of tampering under § 1269.[11]    Evidence is immediately retrievable if the police perceive the evidence or the defendant's "act of suppression" through sight, sound or otherwise.[12]    This includes when an officer observes an individual "making a throwing motion during pursuit."[13]

In this case, Officer Wilson observed Clay make a throwing motion as he was running away from the officer.    Police later recovered a gun in the area where Clay made the throwing motion.    The gun was immediately retrievable because Officer Wilson perceived Clay's "act of suppression."    Therefore, Clay failed to actually suppress the evidence as is required for an individual to be found guilty of Tampering with Physical Evidence under § 1269.    We therefore reverse the Superior Court's denial of Clay's motion for judgment of acquittal as to the tampering charge.

### C. The Trial Court Did Not Abuse its Discretion When it Denied Clay's Motions to Suppress

Clay argues that the Superior Court abused its discretion when it denied his motions to suppress.    In particular, Clay claims that Corporal Diaz, the initial

---

[10]  991 A.2d 1135, 1138 (Del. 2010) (emphasis added).
[11]  *Id.* (citing *Pennewell v. State*, 977 A.2d 800, 803 (Del. 2009)).
[12]  *Id.* at 1140-41.
[13]  *Id.* at 1141 (citing *Commonwealth v. Delgado*, 679 A.2d 223, 225 (Pa. 1996)).

officer that approached Clay, did not have a reasonable, articulable suspicion that Clay had engaged in criminal activity to justify stopping him. Clay also contends that officers lacked probable cause to arrest Clay. The Superior Court rejected both of Clay's motions to suppress, finding that the officers had reasonable suspicion to stop Clay, and probable cause to arrest him.

"We review the grant or denial of a motion to suppress for an abuse of discretion."[14] "[T]his Court will defer to the factual findings of a Superior Court judge unless those findings are clearly erroneous."[15] We review the trial judge's application of the law to his or her factual findings *de novo*.[16]

Clay first claims that the Superior Court erred when it denied his first motion to suppress because Corporal Diaz did not have a reasonable, articulable suspicion of criminal activity to justify stopping Clay and Martin simply because they were walking near Land after the robbery. When "reviewing the denial of a motion to suppress evidence based on an allegedly illegal stop and seizure, we conduct a *de novo* review to determine whether the totality of the circumstances, in light of the trial judge's factual findings, support a reasonable articulable suspicion for the stop."[17] "Reasonable suspicion has been defined as the officer's ability to 'point to

---

[14] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008).
[15] *State v. Rollins*, 922 A.2d 379, 382 (Del. 2007).
[16] *Burrell v. State*, 953 A.2d 957, 960 (Del. 2008).
[17] *Lopez-Vazquez*, 956 A.2d at 1285.

12

specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion.'"[18] "A determination of reasonable suspicion must be evaluated in the context of the totality of the circumstances as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[19]

When Corporal Diaz first encountered the men, they were running across the street at an intersection near the Dollar General store just after it had been robbed. Corporal Diaz testified that upon seeing his marked police vehicle, the trio began walking quickly, and the Superior Court found that such "behavior is reasonably seen as furtive."[20] The Superior Court judge also found that it was reasonable for the officer to find Land, Clay and Martin's "concerted activity" suspicious considering a robbery had just taken place near where the men were seen, and one of the men matched a description of the suspect. No other individuals were in the area. Viewing the totality of the circumstances through the eyes of a trained police officer in the same or similar circumstances, the foregoing facts as well as rational inferences from those facts warranted Corporal Diaz's effort to detain Clay. Thus,

---

[18] *Coleman v. State*, 562 A.2d 1171, 1174 (Del. 1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968)).
[19] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).
[20] Appellant's Opening Br., Ex. A at 11.

13

the Superior Court did not abuse its discretion when it denied Clay's first motion to suppress.

Second, Clay contends that the Superior Court erred when it denied his second motion to suppress because Officer Wilson did not have probable cause to arrest him. "This Court has stated that a police officer has probable cause to arrest someone when the officer possesses 'information which would warrant a reasonable man in believing that a crime has been committed.'"[21] The Superior Court found that Officer Wilson did have probable cause to arrest Clay for the crimes of robbery and conspiracy, and we agree.

As discussed, shortly after the robbery an officer observed Clay walking near the Dollar General store with a man who matched the description of the robbery suspect. After a lawful encounter with that officer, Clay ran. As he was running, he appeared to throw an object over a fence. Given the totality of the circumstances, it was reasonable for Officer Wilson to believe that Clay was involved in the robbery and therefore had probable cause to place him under arrest. The Superior Court did not abuse its discretion by denying Clay's second motion to suppress.

---

[21] *Clendaniel v. Voshell*, 562 A.2d 1167, 1170 (Del. 1989).

**D. The Superior Court Abused its Discretion when it Required the State to Provide a Copy of a Department of Justice Intake Sheet and Copies of the Prosecutor's Notes from Witness Interviews to Defense Counsel under Superior Court Criminal Rule 26.2**

On cross-appeal, the State claims that the Superior Court abused its discretion when it required the State to provide a redacted copy of the Department of Justice's intake document and copies of the prosecutor's notes from witness interviews to defense counsel under Superior Court Criminal Rule 26.2. "We review a trial judge's application of the Superior Court Rules relating to discovery for an abuse of discretion."[22]

Rule 26.2 codifies the decision of the United States Supreme Court in *Jencks v. United States*,[23] and provides that following the direct examination of a witness, the party who did not call the witness may move for the opposing party "to produce, for the examination and use of the moving party, any *statement* of the witness that

---

[22] *Oliver v. State*, 60 A.3d 1093, 1095 (Del. 2013).

[23] 353 U.S. 657 (1957). As this Court noted in *Valentin v. State*, "Superior Court Criminal Rule 26.2 substantively mirrors Federal Rule of Criminal Procedure 26.2" which was adopted to incorporate the Jencks Act, 18 U.S.C. §3500, into the Federal Rules. 74 A.3d 645, 648 n. 10 (Del. 2013). In these situations, this Court i) reviews the Superior Court's application of the Superior Court Rules of Criminal Procedure for an abuse of discretion, and, if the Rules were misapplied or an abuse of discretion occurred, ii) applies "a three-factor test that considers '(1) the centrality of the error to the case; (2) the closeness of the case; and (3) the steps taken to mitigate the results of the error.'" *Id.* at 649 (quoting *Oliver*, 60 A.3d at 1096–97). "We will reverse a conviction on the basis of a discovery violation only if the defendant's substantial rights are 'prejudicially affected.'" *Id.* (quoting *Oliver*, 60 A.3d at 1097).

is in their possession and that relates to the subject matter concerning which the witness has testified."[24]   A "statement" under the rule is defined as:

> (1) A written statement made by the witness that is signed or otherwise adopted or approved by the witness; (2) A substantially verbatim recital of an oral statement made by the witness that is recorded contemporaneously with the making of the oral statement and that is contained in a stenographic, mechanical, electrical, or other recording or a transcription thereof; or (3) A statement, however taken or recorded, or a transcription thereof, made by the witness to a grand jury.[25]

It was error for the Superior Court to require the State to provide Clay's counsel with a redacted copy of the Department of Justice's intake document following direct examination of Corporal Diaz.   The Superior Court reviewed the intake document, *in camera*, and determined that certain portions of the intake document were "beyond the purview of Rule 26 cross-examination" as "work product and investigative techniques."[26]   The Superior Court also determined, however, that certain portions of the document had to be disclosed under Rule 26.2 because the intake officer, Detective Cordrey, was "reporting what others have reported to him, and in context, you can see where [Corporal Diaz's] input is reflected."[27]

---

[24] Super. Ct. Crim. R. 26.2(a) (emphasis added).
[25] Super. Ct. Crim. R. 26.2(f).
[26] Appellee's Answering Br., Ex. A at 3-4.
[27] *Id.* at 5.

16

While we understand the trial court's commendable concern that defense counsel have all the information necessary to address the State's case, Rule 26.2 does not authorize the production of the intake sheet, as the intake sheet was not a statement as that term is defined by the rule.[28]   As previously stated, a statement is defined, in relevant part, as "a written statement made by the witness that is signed or otherwise adopted or approved by the witness"[29] or "a substantially verbatim recital of an oral statement made by the witness."[30]   Clay's counsel sought the intake document as Corporal Diaz's statement following his direct examination. However, Corporal Diaz was not present when the intake sheet was created, and he did not sign, adopt or approve the intake document.[31]   Further, Diaz had not made an oral statement that had been reduced to a substantially verbatim recital.   Thus, the Department of Justice's intake sheet is not discoverable under Rule 26.2 because it is not Corporal Diaz's "statement" as defined under the rule.

---

[28]  Additionally, Superior Court Criminal Rule 16 specifically provides that it "does not authorize the discovery or inspection of reports, memoranda, or other internal state documents made by the attorney general or other state agents in connection with the investigation or prosecution of the case, or of statements by state witnesses or prospective state witnesses." Super. Ct. Crim. R. 16(a)(2).

[29]  Super. Ct. Crim. R. 26.2(f)(1).

[30]  Super. Ct. Crim. R. 26.2(f)(2).

[31]  The prosecutor explained that during an intake, the intake officer, in this case Detective Cordrey, gives a general narrative of events to an intake paralegal who will then type notes into a document called the Department of Justice Intake Sheet.   The narrative typically reflects what is written in the police report.

The Superior Court also committed error by requiring the prosecutor to produce notes she had taken during witness interviews in preparation for the suppression hearings and trial to Clay's defense counsel under Rule 26.2. The trial court initially ordered the prosecutor to turn over notes she had taken during her interview with Karl Woody, the custodian of the Dollar General store surveillance video from the night of the robbery. The trial court denied the prosecutor's request that the court review her notes *in camera*, reasoning that the prosecutor should have had an investigator present during the interview. At a later point, acknowledging that defense counsel would likely make a request under Rule 26.2 for every witness, the prosecutor made the trial court aware that she possessed notes from interviews with several police officers, which she took when preparing for the suppression hearings and trial. The prosecutor reiterated that she objected to turning over her notes, but wanted to ensure that she was complying with the trial court's earlier ruling. The trial court ordered the prosecutor to turn over the notes.

The notes that the prosecutor was required to turn over do not qualify as witness statements under Rule 26.2(f). During the trial court's initial discussion with the prosecutor regarding the notes from her interview with Mr. Woody, the prosecutor stated that she "read the notes to the witness and he confirmed their accuracy."[32] However, the notes were merely notes and were not a statement

---

[32] App. to Appellee's Answering Br. at 68.

18

signed, adopted or approved by the witness. The prosecutor also stated that none of her notes were substantially verbatim recitations of the witness's oral statement. The record supports the prosecutor's characterization of her notes as to all of the witnesses. Therefore, the Superior Court abused its discretion by ordering that the prosecutor turn over her notes as qualifying witness statements under Rule 26.2.

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** in part and **AFFIRM** in part the judgment of the Superior Court.