IN THE SUPREME COURT OF THE STATE OF DELAWARE

RODERICK MUMFORD,      §
                              §    No. 434, 2017

Defendant Below,      §

Appellant,      §    Court Below: Superior Court

     §    of the State of Delaware

v.      §

     §

STATE OF DELAWARE,      §    Cr. ID No. 1608020942A

     §

Plaintiff Below,      §

Appellee.      §

Submitted: October 17, 2018
Decided:    October 17, 2018

Before **STRINE**, Chief Justice; **SEITZ**, and **TRAYNOR**, Justices.

## **O R D E R**

This 17th day of October 2018, it appears to the Court that:

(1)    Roderick Mumford appeals only the Superior Court's denial of his motion for acquittal as to his money laundering charge under 11 *Del. C.* § 951(a).

(2)    Mumford was seen leaving a suspected "stash house," and arrested by the police.[1] During searches of both that house and a second house connected to Mumford, the police found large quantities of illegal drugs, supporting an inference that Mumford had an intent to deal.[2] The police also found over $1,000 in cash in

---

[1] Answering Br. at 4.
[2] *Id.* at 4–5.

the first house and keys to two safety deposit boxes in the second house.[3]  The boxes, jointly owned by Mumford and others, contained over $100,000 in cash.[4]

(3)    Mumford was indicted for a slew of drug-related offenses in addition to money laundering and conspiracy to commit money laundering.  At trial, the State presented circumstantial evidence that Mumford dealt drugs and was engaged in money laundering.  Specifically, the State offered testimony from an expert to explain that when large quantities of drugs are found with large quantities of money, the money is usually tied to drug dealing.[5]  The State played a previously recorded interview between Mumford and the police where he was evasive about how he obtained his money, claiming to only have money at the stash house and in a bank account.[6]  And in that same interview, Mumford admitted to owning the safety deposit boxes, but claimed that only paperwork was in them.[7]  At trial, the co-owners of the safety deposit boxes did testify that some of the money found was theirs, but even crediting their testimony, over $40,000 remained unaccounted for.[8]  Mumford

---

[3] *Id.*

[4] *Id.* at 7–10.

[5] *See* App. to Answering Br. at B58–131 (Testimony of Lt. Tyndall (July 11, 2017)).

[6] *See generally* Exhibit A to Answering Br. (State Police video interview of Mumford).

[7] *Id.* at 1:00:00–1:02.35.

[8] *See, e.g.*, App. to Opening Br. at A137 (Trial Testimony of Shawanda Knox (July 14, 2017)) (Q: In that safety deposit box, besides the $17,900, did you have other lottery winning, as well?  A: Yes.  I had my savings from my job and I do little odd jobs on the weekends.  I sell my purses and my clothes.  Q:  Is it your habit to put money in a safety deposit box?  A:  Yes.").

introduced no evidence, such as a W-2, that he had legitimate employment that could have generated that amount of cash.

(4) At the close of the State's case, Mumford moved for acquittal as to his money laundering and conspiracy to commit money laundering charges.[9] The Superior Court granted his motion as to the conspiracy charge but denied it as to the money laundering charge.[10] The jury found Mumford guilty of money laundering,[11] and he appeals only the Superior Court's denial of his motion for acquittal.

(5) We review *de novo*, examining "whether any rational trier of fact viewing the evidence in the light most favorable to the State, could find a defendant guilty beyond a reasonable doubt of all elements of the crime."[12] "For the purposes of this inquiry, this Court does not distinguish between direct and circumstantial evidence of defendant's guilt."[13]

(6) Mumford's appeal is without merit. The State presented evidence that Mumford possessed large amounts of illegal drugs, from which a jury could rationally conclude Mumford possessed the drugs to sell for profit.[14] Other

---

[9] Opening Br. at 1.
[10] Answering Br. at 1.
[11] *Id.* at 1–2.
[12] *Clay v. State*, 164 A.3d 907, 913 (Del. 2017) (quotation marks omitted) (citation omitted).
[13] *Cline v. State*, 720 A.2d 891, 892 (Del. 1998).
[14] App. to Answering Br. at B22–25(Testimony of Officer Jason Glenn (July 11, 2017)).

evidence, including expert testimony by an officer experienced in the conduct of illegal drug trafficking, gave the jury a basis for reaching that conclusion.[15]

(7)    Likewise, the State presented evidence that rationally supported a conclusion that a substantial portion of the $100,000 found in the two safety deposit boxes and the over $1,000 found at the first house where the illegal drugs were seized was attributable to drug dealing.   That evidence included: (i) Mumford's own evasive statements about where he kept his money, what his housing costs were, and how he afforded his lifestyle;[16] (ii) Mumford's admission that he had access to the safety deposit boxes only after he was specifically asked about them;[17] (iii) Mumford's false claim that the boxes contained only paperwork;[18] (iv) Mumford's statement that any money he had was either at the first stash house or put into bank accounts, which jurors could infer is typical of where pay for legitimate work is deposited;[19] (v) the fact that instead of being found in a bank account as Mumford's statement suggests, the vast bulk of money rationally attributable to Mumford was found in safety deposit boxes instead of traceable bank accounts;[20] (vi) the absence

---

[15] *Id.* at B69, 73, 80–83, 85–90, 94–98 (Testimony of Lt. Tyndall (July 11, 2017))

[16] Exhibit A to Answering Br. (State Police video interview of Mumford at 44:40–47:00).

[17] *Id.* at 50:00–52:00

[18] *Id.*

[19] *Id.* at 50:30–51:30 ("Q:  How much money you have in your bank account . . . . A:  It's not a lot; it's not even like $2,000."); at 1:01:43("The only money I'm accountable for is in Houston Acres.")

[20] Mumford had only about $4,100 in his savings and checking accounts.  Opening Br. at 8; App. to Opening Br. at A101–02 (Testimony of Detective Robert Cowden (July 13, 2017)).

4

of any record evidence that Mumford had legitimate earnings or other sources of legitimate income that could have generated over $40,000 of cash;[21] and (vii) the fact that over $1,000 was found alongside the illegal drugs at the first house. This evidence, taken in its totality, provided a sufficient basis for the jury to conclude with the required certainty that a substantial amount of the cash found in the safety deposit boxes was the product of Mumford's sale of illegal drugs.[22]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice

---

[21] *See* App. to Opening Br. at A87–89 (Testimony of Joyce Brown-Walker (July 12, 2017)); A141 (Testimony of Shawanda Knox (July 14, 2017)).

[22] Pointing to a federal statute, Mumford makes a confusing argument that the Delaware statute he was convicted under requires the defendant have constructive possession of the currency in question. *See* Opening Br. at 10–11 (citing 18 U.S.C. § 1956). The federal statute is inapplicable because it requires more elements than the Delaware statute, such as the existence of a financial transaction. *Compare* 18 U.S.C. § 1956, *with* 11 *Del. C.* § 951(a). The Delaware statute requires only that "[t]he person knowingly *acquires or maintains an interest in*, conceals, possesses, transfers, *or* transports the proceeds of criminal activity." 11 *Del. C.* § 951(a) (emphasis added). In other words, although the heading of § 951 is "Money laundering," the statute does not require "laundering" in the most common sense of that term; that is that the proceeds from illegal activities be transformed into other ostensibly legitimate assets in order to conceal their origin. As we have shown, the State introduced sufficient evidence to permit the jury to infer that substantial sums of cash belonging to Mumford were the product of his involvement in sales of illegal drugs. In fact, even if the Delaware statute required Mumford to have constructive possession of the cash in question, the State produced evidence from which the jury could conclude that Mumford controlled the cash in the safety deposit boxes and the cash seized at the first house.