SUPERIOR COURT
OF THE

E. SCOTT BRADLEY
JUDGE

SUSSEX COUNTY COURTHOUSE
1 THE CIRCLE, SUITE 2
GEORGETOWN, DELAWARE 19947
TELEPHONE (302) 856-5256

December 7, 2018

Casey L. Ewart, Esquire
Deputy Attorney General
Department of Justice
114 East Market Street
Georgetown, DE 19947

Patrick J. Collins, Esquire
Collins & Associates
716 North Tatnall Street, Suite 300
Wilmington, DE 19801

RE: *State of Delaware v. Christopher Clay*
**ID # 1408007714A**

Date Submitted: November 5, 2018

Dear Counsel:

This is my decision on Christopher Clay's timely-filed Amended Motion for

Postconviction Relief. Clay was convicted of Robbery in the First Degree,

Possession of a Firearm During the Commission of a Felony, Conspiracy in the

Second Degree, Tampering with Physical Evidence, and Resisting Arrest. Clay's

convictions arose out of the robbery by him, Maurice Land and Booker Martin of the

Dollar General store in Georgetown, Delaware. I sentenced Clay to 49 years and six

months at supervision level 5, suspended after serving 40 years and six months at

supervision level 5 for probation. The Supreme Court vacated Clay's conviction for

Tampering with Physical Evidence, but affirmed his convictions as to the other four charges.[1]

## STATEMENT OF THE FACTS

Clay's convictions arose out of an armed robbery of the Dollar General store in Georgetown, Delaware. On August 9, 2014, an employee of the Dollar General store in Georgetown, Delaware was taking a register till to her office shortly before 9:00 p.m. As she entered her office, a man wearing a black hat and a t-shirt that said "Security" on the back approached her in her office while displaying a black handgun. He ordered her to give him the money from the register till she had and another till that was in the office. After she did so, he told her to get on the ground. The man then exited the store and the employee called the police.

Shortly after the robbery occurred, Corporal Joel Diaz of the Georgetown Police Department observed three black males run across the street. Corporal Diaz testified that his attention was initially drawn to the men because a series of robberies had taken place in the area. As Corporal Diaz continued to observe the men, a call came over his radio that a robbery had taken place at the Dollar General store, which was a quarter of a mile away from his location. The radio call described the suspect as a black male dressed in all black and possibly armed with a handgun. Corporal

---

[1] *Clay v. State*, 164 A.3d 907 (Del. 2017).

Diaz realized that one of the three men that he was observing was dressed in all black. The officer approached the men, rolled down his window and asked them to stop. At first, the men ignored him, but when Corporal Diaz stopped and exited his vehicle, one of the men, later identified as Christopher Clay, ran. Corporal Diaz radioed to other officers to pursue Clay and ordered the other two men, later identified as Maurice C. Land and Booker T. Martin, to stop.

Corporal Diaz and another Georgetown Police officer, Officer Derrick Calloway, were eventually able to detain Land and Martin. As Land was getting on the ground, he removed his shirt, which was black with "Security" written across the back in yellow letters. The officers also found a black baseball cap on the sidewalk near where Land had been standing. At the time of his arrest, Land had a latex glove and $81 in cash on his person. Martin had $897 in cash in his pocket in three bundles that were folded and organized by denomination.

While Corporal Diaz and Officer Calloway were with Land and Martin, Officer John Wilson was responding to Corporal Diaz's call to pursue Clay. Officer Wilson saw Clay running in the opposite direction of his car. He exited the vehicle and began chasing Clay on foot. Clay continued to run, and Officer Wilson observed him raise his hand into the air. Officer Wilson testified:

I didn't know if [Clay] was going to run like he was going to turn or if

he was throwing something. And I thought - I did think I saw something leave his hand, but the lights are - it was dark; my overheads on my police car are on; everything's flashing.

Clay eventually got into a parked vehicle, and Officer Wilson ordered him out of the vehicle at gunpoint. Clay had $280 in cash in his pocket, folded and organized by denomination, and $1.17 in change. Officers later recovered a black handgun on the opposite side of a fence near where Officer Wilson observed Clay making a throwing motion.

Security footage from the Dollar General store showed Clay entering the store with Land shortly before 9:00 p.m. Land went to the back of the store and into the office, where surveillance cameras recorded him putting on a clear glove and taking money out of an employee's wallet. When the employee entered the office, Land pointed a handgun at her and demanded the money from the register tills. He then made her get on the ground, and he left the office. As Land was in the back of the store, Clay placed several items on the counter. Four seconds after Land left the store, Clay followed without purchasing any of those items.[2]

A joint trial for Clay and his co-defendants was held. All three of the

---

[2] All of the above facts were taken verbatim from the Supreme Court's decision in *Clay v. State*, 164 A.3d 907, 911-12 (Del. 2017).

4

defendants were subsequently convicted at trial. Martin's convictions, except for a misdemeanor Resisting Arrest charge, were later vacated and dismissed pursuant to a post-trial Motion for Judgment of Acquittal.

## DISCUSSION

This is Clay's first motion for postconviction relief and it was filed in a timely manner. Clay argues that his trial counsel was ineffective because he (1) did not renew his motion to sever when it became clear that Land's trial counsel was going to introduce testimony at trial regarding a number of robberies in Baltimore, Maryland; (2) did not object to the testimony at trial regarding the robberies in Baltimore, Maryland, or seek a mistrial when the testimony came in, or request a limiting jury instruction regarding the testimony before the case went to the jury, or appeal the admission of the testimony to the Supreme Court; and (3) did not file a motion for a new trial after Land submitted a post-trial affidavit stating that Clay and Martin had nothing to do with the robbery. Clay's trial counsel and the State have filed affidavits in response to Clay's allegations.

Clay submitted four different arguments in his *pro se* motion for postconviction relief. I then appointed postconviction counsel for Clay. Clay's postconviction counsel did not advance any of them. Therefore, I have considered Clay's four *pro se* arguments to be abandoned. The United States Supreme Court has established the

5

proper inquiry to be made by courts when deciding a motion for postconviction relief.[3] In order to prevail on a claim for ineffective assistance of counsel pursuant to Superior Court Criminal Rule 61, the defendant must engage in a two-part analysis.[4] First, the defendant must show that counsel's performance was deficient and fell below an objective standard of reasonableness.[5] Second, the defendant must show that the deficient performance prejudiced the defense.[6] Further, a defendant "must make and substantiate concrete allegations of actual prejudice or risk summary dismissal."[7]

To establish prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine the outcome."[8] To establish a reasonable probability of a different result, the defendant needs to "show a 'probability sufficient to undermine the confidence

---

[3] *Strickland v. Washington*, 466 U.S. 668 (1984).

[4] *Strickland*, 466 U.S. at 687.

[5] *Id.* at 687.

[6] *Id.* at 687.

[7] *State v. Coleman*, 2003 WL 22092724 (Del. Super. Feb. 19, 2003).

[8] *Strickland*, at 694.

6

in the outcome,' a standard lower than 'more likely than not.'"[9]  Moreover, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[10]  It is also necessary that the defendant "rebut a 'strong presumption' that trial counsel's representation fell within the 'wide range of reasonable professional assistance,' and this Court must eliminate from its consideration the 'distorting effects of hindsight when viewing that representation.'"[11]

## Claim One - Motion to Sever

Clay argues that his trial counsel was ineffective because he did not renew his motion to sever Clay's trial from that of his co-defendants when it became apparent before trial that Land's counsel was going to introduce at trial evidence of supposedly similar robberies in Baltimore.  Clay argues that this evidence allowed the jury to conclude that Clay was part of a gang that had committed a series of robberies in Baltimore and also had robbed the Georgetown Dollar General store.

---

[9] *Ploof v. State*, 75 A.3d 840, 852 (Del. 2013).

[10] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009) (quoting *Strickland*, 466 U.S. at 686).

[11] *Coleman*, 2003 WL at *2, *quoting Strickland*, 466 U.S. at 689.

7

## The Baltimore Robberies - Pre-trial

I held a pre-trial hearing regarding issues involving the authenticity of the videotape of the Georgetown Dollar General store robbery. At that hearing, Karl Woody, a Dollar General store loss prevention manager, testified as follows regarding the videotape:

> Well, what stuck out with me was the one gentlemen had security on his back. I was working a string of robberies in the Baltimore area with the same kind of get-up. So that kind of stuck with me. I was really concerned, was this the same guys hitting my Baltimore stores. So that kind of stuck in my mind on some of the details.[12]

Land's counsel made it clear before trial that he was going to use this evidence at trial to argue that the person who had robbed the stores in Baltimore had also robbed the Georgetown Dollar General store and that it was Land's misfortune to be similarly dressed as the robber and near the store right after the robbery.

Clay's trial counsel states that he did not renew his motion to sever because he thought it would have been frivolous to do so. Clay's trial counsel notes that Woody's pre-trial statement involved robberies that (1) did not implicate Clay, (2) did not involve more than one robber, (3) did not involve in-store and out-of-store lookouts, and (4) did not involve a robber using a gun. Quite simply, Clay's trial

---

[12] A192 (All references to the record herein refer to the Appendix to Amended Motion for Postconviction Relief).

8

counsel was not concerned about the Baltimore robberies because they were not at all like the Georgetown Dollar General store robbery and, as such, did not implicate Clay.

Clay's trial counsel is correct about the differences in the robberies. The Georgetown Dollar General store robbery was very different than the Baltimore robberies. It involved three people, one of whom had a handgun, and two others that acted as lookouts. Land robbed the store clerk using a handgun. Clay acted as the in-store lookout. Martin acted as the out-of-store lookout. Clay's defense was that he simply had nothing to do with the robbery.

Superior Court Criminal Rule 8(b) provides that "[t]wo or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count." The Delaware Supreme Court set forth four factors that a trial court should consider when determining whether to sever defendants: "(1) problems involving a co-defendant's extra-judicial statements; (2) an absence of substantial independent competent evidence of the movant's guilt; (3) antagonistic defenses as between the co-defendant and the movant; and (4) difficulty in segregating the State's evidence

9

as between the co-defendant and the movant."[13]

I would not have granted a Motion to Sever if Clay's trial counsel had filed one because no factor favors severance. The four factors that address severance are the following:

(1) <u>Problems Involving a Co-Defendant's Extra-Judicial Statements</u>.

This factor is not implicated at all because no such statements were going to come into evidence.

(2) <u>An Absence of Substantial Independent Evidence of the Movant's Guilt</u>

This factor is not implicated at all because there was a great deal of substantial independent evidence of Clay's guilt. The earlier motions to sever filed by Clay and Martin were denied because all of the evidence against Land, Clay and Martin was going to come in against Clay and Martin even if they were tried separately. This was a logical consequence of a conspiracy, particularly so for Clay since he was an accomplice. Thus, severance made no sense. There was video evidence of Clay's involvement in the robbery. There were also a number of police officers who witnessed Land, Clay and Martin together after the robbery. The video shows the following: Clay and Land entered the store together and both immediately turned left after they entered. Clay actually walked into the store in front of Land. Land is

---

[13] *Floudiotis v. State*, 726 A.2d 1196, 1210 (Del. 1999).

10

wearing a black baseball cap and white sunglasses. Land went up and down an aisle a few times and then went to the office at the back of the store. Land then put on a clear glove and went through a purse and took money out of it. Land went in and out of the office. Land then followed a store clerk carrying a cash register till into the office. Land used a gun to force the store clerk to give him money from the till. The clerk took money out of the till apparently in denomination order and handed it to Land. Land then walked out of the office, leaving the store clerk behind. While Land was robbing the store clerk, Clay was talking on a cell phone and walking around the front of the store by the two cashiers and placing items on the counter for purchase. Once Land finished robbing the store clerk he walked past Clay and out of the store. Clay walked out of the store only four seconds behind Land and without purchasing any of the items he put on the counter. The robbery took less than five minutes.

Only minutes after the robbery Georgetown police officer Diaz saw Land, Clay and Martin running across the street together. Officer Diaz asked the three men to stop. Land and Martin eventually did stop, but Clay ran away. Officer Diaz detained Land and Martin and asked for help from other officers in catching Clay. Georgetown police officer John Wilson saw Clay running and throwing something over a fence. Officer Wilson captured Clay. The police found a handgun on the other side of the fence. Clay had $280 in his pants folded and arranged by denomination.

Martin had $897 in his pocket in three bundles that were folded and arranged by denomination. Land had a black shirt that had "Security" on it. The police also found a black baseball cap near where Land was captured. The police found a latex glove and $81 on Land's person. Land and Clay were in the store during the robbery and were captured together with Martin only minutes after the robbery with the gun that was used by Land to rob the store clerk and the money that Land took from the store clerk. This is powerful evidence of Clay's guilt.

(3)  <u>Antagonistic Defenses As Between The Co-Defendant and Movant</u>.

This factor is hardly implicated. Land's defense was that he was not the man in the video. Clay's defense is that he had nothing to do with the robbery and was just a customer in the store. These are not antagonistic defenses. The jury could have believed both defenses. The jury did not have to accept one defense and reject the other. There is nothing antagonistic or conflicting about Land not being the robber and Clay not being involved in the robbery at all.

4.  <u>Difficulty In Segregating The State's Evidence As Between The Co-Defendants and Movant</u>.

This factor is not implicated at all. As to the actual robbery, what Land and Clay did is captured on video. Land, Clay and Martin were captured together only minutes after the robbery. Eyewitnesses testified as to what each did and what each

12

had on them when they were captured.

As I noted before, none of the factors favor severance. Moreover, Woody's proposed testimony regarding the Baltimore robberies was not prejudicial to Clay because the Baltimore robberies were so different from the robbery of the Georgetown Dollar General store that they did not implicate Clay. Clay's argument that the jury found him guilty of the Dollar General store robbery because it believed that he was a part of a gang that had also committed the robberies in Baltimore is simply not based on the facts. There was no testimony about a gang committing robberies in Baltimore. Woody's testimony was so vague and general as to be worthless. It did not implicate Clay at all. The jury convicted Clay because of the overwhelming evidence linking him to the Georgetown Dollar General store robbery. Excluding Woody's testimony about the Baltimore robberies would not have changed the result in this case. Trial counsel's performance was neither deficient nor did it prejudice the defense.

### Claim Two - Objection, Mistrial, Limiting Instruction and Appeal.

Clay argues that at trial his trial counsel should have (1) objected to Woody's proposed testimony, (2) requested a mistrial after Woody testified, (3) requested a limiting instruction regarding Woody's testimony arguing the inapplicability of it to Clay, and (4) filed an appeal addressing the admissibility of Woody's testimony.

13

Once again, Clay argues that Woody's testimony regarding the Baltimore robberies led the jury to believe that Clay was part of a gang that robbed the stores in Baltimore and also robbed the Georgetown Dollar General store. Clay's trial counsel did not do all the things at trial that Clay now argues that he should have done for the same reason he did not renew his motion to sever. He simply was not concerned about Woody's testimony because the Baltimore robberies were so different as to the robbery of the Georgetown Dollar General store as to be irrelevant. I agree.

### The Baltimore Robberies - Trial

At trial Woody testified (1) that there had been a string of robberies in the Baltimore area committed by a person wearing a shirt with "Security" on it, (2) that there was a guy that hit a Dollar General store in the Baltimore area who was dressed in all black, but was not wearing a shirt with the word "Security" on it, and (3) that none of the defendants were involved in the robbery of the Dollar General store in Baltimore.

Clay's problem was not Woody's trial testimony. Indeed, if anything, Woody's trial testimony was irrelevant. Woody did not testify about a gang robbing the stores in Baltimore. Woody did testify that none of the defendants were involved in the Baltimore robberies. Clay's problem was the evidence that did implicate him in the robbery of the Georgetown Dollar General store. The video shows Land and Clay

14

going into the store together and immediately turning left together. The video shows Land go to the back of the store and rob one of the store clerks with a gun. While Land is doing that, the video shows Clay walking around the front of the store where the cashiers are located and placing a few items on the counter for purchase. Lastly, the video shows Land walk past Clay and out of the store with Clay exiting the store four seconds behind Land without paying for and taking the items that he had put on the counter. The video is powerful evidence of Clay's involvement in the robbery. However, the evidence gets even worse for Clay. Only minutes after Clay and Land leave the store they and Martin are seen running across the street together. When contacted by the police, Clay runs away from the other two and is seen throwing a pistol over a fence. Once they are all arrested, the police have Clay and Land wearing the clothes they had on during the video. Land had the shirt with "Security" on it that is seen in the video. Land had the latex glove on his person that he used in the robbery. Clay had the gun and some of the money. Martin had most of the money. It was this evidence that sealed Clay's fate. All of this is powerful and overwhelming evidence of Clay's guilt. Clay, in his postconviction motion, simply ignores the overwhelming evidence of his guilt. This was not a close case. Woody's generalized and non-specific testimony about factually different robberies in Baltimore did not cause the jury to find Clay guilty. There is simply no reason to believe that. The

15

exclusion of Woody's testimony would not have changed the result in this case. Trial counsel's performance was neither deficient nor did it prejudice the defense.

### Claim Three - Land's Affidavit

Clay argues that his trial counsel was ineffective because he did not seek a new trial after Land submitted an affidavit absolving Clay of the responsibility for the robbery. Land submitted the following affidavit before sentencing:

> And state the facts in writing this affidavit of what I've been accused of or convicted of, that these Men Booker Martin and Christopher Clay had nothing to do with it and I never seen these Men before until that night. I never gave Mr. Martin any money or given Mr. Clay a gun. The night of the Robbery of the Dollar General Store. I am very sorry for leting [sic] this go as far as it did So [sic] I ask that all charges against them be drop. [sic] This is my own choice because it is the right thing to do.[14]

Clay's trial counsel was aware of Land's affidavit and attempted to talk to Land about it, but Land's trial counsel would not let him. Ultimately, Clay's trial counsel took no action, believing that Land's affidavit was worthless. Clay's trial counsel concluded that Land's affidavit was worthless because (1) Land does not acknowledge his involvement in the robbery, which might have lent his affidavit some credibility, and (2) Land does not explain why Clay and Martin had nothing to do with the robbery but somehow ended up with the gun and money.

---

[14] A1054.

16

Clay argues that Land's affidavit is newly discovered evidence and that it forms the basis for a new trial. Land's affidavit is neither. It is not newly discovered evidence because it did not exist until after the trial. The allegations in the affidavit, as far as anyone knows, were never made until post-trial. Moreover, Land's affidavit is just not credible. Land does not accept responsibility for the robbery and he does not explain why Clay and Martin had nothing to do with the robbery even though Clay was obviously an in-store lookout and Clay and Martin ended up with the gun and most of the stolen money. Quite simply, Land's affidavit is just a conclusory statement that fails to explain away the evidence against Clay. I certainly would not have given Clay a new trial based on Land's affidavit.[15] Trial counsel's performance was neither deficient nor did it prejudice the defense.

## CONCLUSION

I have concluded that Christopher Clay's trial counsel acted properly and that the exclusion of Karl Woody's testimony about the Baltimore robberies would not have changed the result in this case. It was the overwhelming evidence of Clay's involvement in the Georgetown Dollar General store robbery that sealed Clay's fate

---

[15] Clay wanted a hearing on Land's affidavit. I see no reason to have one. Land still denies his involvement in the robbery of the Georgetown Dollar General store and is pursing post-conviction relief. Thus, I conclude it unlikely that Land would offer anything further at a hearing.

17

and not Woody's vague testimony about robberies in Baltimore that were committed in a completely different manner. I have also concluded that Clay's trial counsel acted properly regarding Land's affidavit and that the affidavit would not form the basis for a new trial for Clay because its allegations are simply not credible.

Christopher Clay's Motion for Postconviction Relief is DENIED.

Very truly yours,

E. Scott Bradley

cc: Prothonotary

18