IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROBERT POTTS, | § | |
| | § | No. 611, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1709011232 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 11, 2019
Decided: December 30, 2019

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

## **ORDER**

Upon careful consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    In 2018, a Superior Court jury found the appellant, Robert Potts, guilty of possession of a firearm by a person prohibited ("PFBPP"), possession of ammunition by a person prohibited ("PABPP"), carrying a concealed deadly weapon ("CCDW"), drug dealing, and possession of a firearm during the commission of a felony ("PFDCF"). On appeal, Potts claims that the Superior Court erroneously denied his suppression motion. We find no error and affirm.

(2)     At approximately 10:30 p.m. on September 16, 2017, Wilmington Police Detective Matthew Rosaio was on routine patrol in an unmarked police vehicle in the City of Wilmington.  As he waited at the red light controlling the intersection of Seventh and Washington Streets, Detective Rosaio observed a black Chrysler cross his line of sight, heading southbound on Washington Street.  Detective Rosaio noted that the vehicle's registration plate did not appear to be illuminated as required by Delaware law.[1]  Detective Rosaio made a right-hand turn onto Washington Street and began following the Chrysler.  After Detective Rosaio confirmed that the Chrysler's tail lamp was not illuminated, he stopped the vehicle.

(3)     As Detective Rosaio approached the stopped car, the driver—later identified as Potts—thrust his head out of the driver's side window and shouted something to the effect of, "Why are you pulling me over?" Detective Rosaio advised Potts that he had stopped Potts for an equipment violation. Potts responded that he could not be detained "for that."  After Detective Rosaio asked Potts for his license, registration, and proof of insurance, Potts stated he "had all that" and reached into the back seat area toward a duffle bag

---

[1] 21 *Del. C.* § 4334 (c) ("Either a tail lamp or a separate lamp shall be so constructed and placed as to illuminate with a white light the rear registration plate and render it clearly legible from a distance of 50 feet to the rear.  Any tail lamp or tail lamps, together with any separate lamp for illuminating the rear registration plate, shall be so wired as to be lighted whenever the head lamps or auxiliary driving lamps are lighted.")

that lay on the floorboard. Potts pulled the opaque bag into his lap and opened it. As Potts reached into the bag—and before he handed Detective Rosaio any identifying documentation—Detective Rosaio asked if Potts had a weapon on him. Potts answered in the affirmative and stated that he was going to hand the weapon to Detective Rosaio. Detective Rosaio ultimately seized Potts' weapon as well as a large quantity of heroin from the vehicle.

(4) Potts was thereafter indicted by a Superior Court grand jury for PFBPP, PABPP, CCDW, drug dealing, PFDCF, illegal possession of a controlled substance, and resisting arrest. Potts moved to suppress the evidence seized from his vehicle on the grounds that Detective Rosaio's inquiry regarding the presence of weapons in the vehicle improperly exceeded the scope of the traffic stop.

(5) At a suppression hearing held on February 2, 2018, the Superior Court heard testimony from Detective Rosaio and Potts. At the conclusion of the hearing, the Superior Court issued an oral ruling denying Potts' motion. Although Potts had presented some evidence that the vehicle's tail lamp had been functioning three weeks earlier when it was inspected at the Division of Motor Vehicles, the trial judge found Detective Rosaio's testimony that the vehicle's registration plate was not illuminated to be credible. The trial judge noted that Detective Rosaio had later inspected the Chrysler and found that

3

the tail lamp was damaged, and documented this damage in a supplemental police report. Accordingly, the trial judge found that the officer had articulated probable cause for stopping the vehicle because the vehicle's registration plate was not illuminated.[2] The trial judge next found that, whether Detective Rosaio's question about Potts' possession of a weapon constituted routine questioning or not, the question was justified by the totality of the circumstances.

(6) The case proceeded to a jury trial. Prior to trial, the State dismissed the charge of illegal possession of a controlled substance and, during the trial, the Superior Court granted Potts' motion to dismiss the resisting arrest charge. The jury found Potts guilty of the remaining charges and he was sentenced to an aggregate of twelve years of Level V incarceration, followed by decreasing levels of supervision. This appeal followed.

(7) On appeal, Potts claims the Superior Court erroneously denied his suppression motion for a number of reasons. First, Potts claims that the Superior Court abused its discretion in denying the motion to suppress because: (i) the traffic stop was pretextual; (ii) the evidence seized from the search incident to his arrest for resisting arrest should have been suppressed

---

[2] The trial court need only have found reasonable articulable suspicion for the stop. *Clay v. State*, 164 A.3d 907, 915-16 (Del. 2017).

4

because the Superior Court ultimately dismissed the resisting arrest charge; and (iii) Detective Rosaio's questioning exceeded the scope of routine questioning and was not justified by the circumstances. Second, Potts argues the Superior Court abused its discretion by ignoring the ambiguous language of 21 *Del. C.* § 4334 and because the uncontradicted evidence presented below established that Potts' vehicle's tail lamp was functional on September 16, 2017. Third, Potts contends that the Superior Court erred in ignoring the definition of "routine questioning" in 11 *Del. C.* § 1902.[3]

(8) This Court generally reviews a trial court's denial of a motion to suppress evidence for abuse of discretion.[4] To the extent that the claim of error is for an alleged violation of a constitutional right, we conduct a *de novo* review.[5] We will not, however, disturb a trial court's factual findings absent clear error.[6]

(9) Potts' arguments are unavailing. We will not review Potts' claim that the language of 21 *Del. C.* § 4334 is ambiguous or his claim that the

---

[3] 11 *Del. C.* § 1902(a) ("A peace officer may stop any person abroad, or in a public place, who the officer has reasonable ground to suspect is committing, has committed or is about to commit a crime, and may demand the person's name, address, business abroad and destination.").

[4] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1284 (Del. 2008).

[5] *Id.* at 1284-85.

[6] *Id.* at 1285.

Superior Court ignored 11 *Del. C.* § 1902 when considering his motion to suppress because he did not raise them below.[7]

(10) Although Potts now claims that the search of his car was invalid because the charge of resisting arrest was later dismissed, his motion to suppress did not challenge the search of his car. Accordingly, this Court reviews the claim for plain error. Under this standard, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[8] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[9] There is no such error here. The testimony at the suppression hearing was limited to Detective Rosaio's initial detention of Potts and did not touch upon the circumstances that led to Potts' arrest. Accordingly, there is no material defect apparent from the face of the record to support an argument

---

[7] Del. Supr. Ct. R. 8 ("Only questions fairly presented to the trial court may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented."); *Delaware Elec. Coop., Inc. v. Duphily*, 703 A.2d 1202, 1206 (Del. 1997) ("It is a basic tenet of appellate practice that an appellate court reviews only matters considered in the first instance by a trial court. Parties are not free to advance arguments for the first time on appeal.").

[8] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[9] *Id.*

that Potts was deprived of a substantial right or that clearly shows manifest injustice.

(11) Potts' remaining claims lack merit. Although Potts did not explicitly argue that the traffic stop was pretextual below, the Superior Court correctly noted that an officer's subjective intentions play no role in a Fourth Amendment analysis.[10] The record reflects that there was conflicting evidence about whether the tail lamp was working properly on September 16, 2017. The Superior Court's finding—reached only after considering the evidence presented by both the State and Potts—that the lamp was not functional was not clearly erroneous. Finally, we agree with the Superior Court's conclusion that Detective Rosaio's question of whether Potts possessed a weapon was justified in light of the totality of the circumstances.[11] Those circumstances included the following facts: (i) at the time of the stop, Detective Rosaio was unable to trace Potts' vehicle because the registration tag was not visible; (ii) Potts "shouted"[12] at Detective Rosaio in a manner that

---

[10] *Murray v. State*, 45 A.3d 670, 674 (Del. 2012) ("[U]nder the Fourth Amendment of the United States Constitution, the police may of course pull over a vehicle for breaking the law, even if the officers harbor a different subjective motivation.").

[11] *See Pierce v. State*, 2011 WL 1631558, at * 2 n. 14 (Del. Apr. 29, 2011). *See also Murray*, 45 A.3d at 674-75 (noting that United States Supreme Court precedent has held that an officer's inquiries into matters unrelated to the justification for a traffic spot were permissible when they were "measures taken for self-protection at the very start of the traffic stop.")

[12] App. to the State's Ans. Br. at B37.

7

the Superior Court characterized as "confrontational;" (iii) at the time of the stop, Potts was as-yet unidentified;[13] and (iv) Potts recovered from the rear floorboard area an opaque duffle-sized bag and opened it before complying with the officer's request that Potts produce identification.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice

---

[13] At the suppression hearing, Potts testified that he immediately handed Detective Rosaio his driver's license when Detective Rosaio approached the car. The Superior Court found Detective Rosaio's testimony that Potts stated that his identification was in the bag located on the rear floorboard to be credible. We give great deference to a trial court's credibility determinations. *Banther v. State*, 823 A.2d 467, 483 (Del. 2003).