IN THE SUPREME COURT OF THE STATE OF DELAWARE

ALEXANDER DELGADO,      §
     §    No. 134, 2024
     Defendant Below,      §
     Appellant,      §    Court Below—Superior Court
     §    of the State of Delaware
     v.      §
     §    Cr. ID. No.: 2110007977 (N)
STATE OF DELAWARE,      §
     §
     Appellee.      §

Submitted: April 2, 2025
Decided: May 28, 2025

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

## <u>ORDER</u>

This 28th day of May, 2025, after consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1) Alexander Delgado seeks review of his convictions for robbery in the first degree and possession of a firearm during the commission of a felony ("PFDCF"). Delgado claims that the evidence the State presented at trial was insufficient for the jury to find that he shared his accomplice's intent to brandish a firearm during the robbery. He also claims that the accomplice-liability instruction given by the Superior Court was deficient and that this deficiency resulted in plain error. We conclude that Delgado's arguments lack merit and affirm.

(2)     Two masked men, later identified as Keith Gibson and Alexander Delgado, walked into the Rite Aid pharmacy at the Adams Four shopping center in Wilmington shortly after it opened for the day on June 8, 2021.  Gibson walked up to the counter with Delgado trailing behind.  When he reached the counter, Gibson pointed a gun at the clerk, Sandra Collins.  Collins opened the cash register for Gibson, and Gibson handed Collins a plastic bag.  Collins had been trained, in the event of a robbery, to hand over the money in the cash register and to include with it a modified stack of bills—kept in the cash register at all times—that housed a GPS tracking device.  Following her training in this instance, she put the stack of GPS-traceable money into Gibson's bag.  After Collins had turned most of the money in the cash register over to Gibson, Gibson asked her if she could open the store's safe. Collins told him that she could not because she was not a manager.

(3)     While Collins was handing over the money from the cash register to Gibson, Delgado stepped behind the counter and began to shovel packs of Newport cigarettes into a red bag.  When asked at trial why she permitted Delgado to step behind the counter, Collins answered, "Because there was a gun pointed at me."[1] The entire theft was over in under two minutes, and Gibson and Delgado left the Rite Aid without further incident.  Surveillance cameras from the Rite Aid captured the robbery in its entirety.

---

[1] App. to Opening Br. at A107.

(4) The removal of the GPS tracker from the cash register triggered a notification on the cellphone of Rite Aid's regional asset-protection leader, Pete Vari. He called Collins to ask what happened, and Collins explained to him that a theft had occurred. Vari then contacted the Wilmington Police Department and provided the location data from the GPS tracker.

(5) Police quickly located Gibson and Delgado, who had taken the money to an empty property less than two blocks from the Rite Aid. Gibson fled into an alleyway but ultimately failed to evade police. A search of Gibson's person revealed a large amount of cash, an empty gun holster, a large knife, and some .357 caliber ammunition. A search of the alley where Gibson was caught yielded a .357 caliber revolver. There is no indication in the record that Delgado ever touched the gun. Shortly after Gibson was arrested, police also arrested Delgado, who was still near the property.

(6) Delgado was indicted on three counts: robbery in the first degree, PFDCF, and conspiracy in the second degree. Though he admitted that he was guilty of conspiracy to commit robbery, Delgado argued at trial that he should be acquitted of PFDCF and convicted only of the lesser included offense of robbery in the second degree because he did not know that Gibson intended to use a firearm or other deadly weapon during the theft. Delgado was convicted on all counts.

(7)    During the proceedings in the Superior Court, Delgado filed two motions for judgment of acquittal—one after the State had presented its case-in-chief and the other after the jury returned its verdict—arguing that the State had failed to meet its burden of proving beyond a reasonable doubt that Delgado was an accomplice to robbery in the first degree and PFDCF.  Delgado also moved for a new trial, challenging the Superior Court's accomplice-liability instruction and again arguing that the evidence presented by the State was insufficient to support a conviction of robbery in the first degree and PFDCF.  The Superior Court denied all three motions and sentenced Delgado to six years of Level V incarceration plus probation.[2]  This appeal followed.

(8)    On appeal, Delgado challenges his first-degree robbery and PFDCF convictions.   He first repeats the sufficiency-of-the-evidence argument that he advanced in his motions for judgment of acquittal below.  Specifically, he argues that the evidence presented did not show that Delgado "shared [Gibson]'s purpose to commit the robbery with a deadly weapon."[3]  Delgado also claims that a jury instruction given by the Superior Court on the issue of accomplice liability was legally incorrect.  Delgado did not object to the instruction in the trial court but

_____

[2] *See* Opening Br. Ex. A (denying motion for judgment of acquittal during trial); *State v. Delgado*, 2023 WL 4692507 (Del. Super. Ct. July 21, 2023) (denying post-trial motions for judgment of acquittal and new trial); Opening Br. Ex. C (sentence order).
[3] Opening Br. at 10 (quoting *Allen v. State*, 970 A.2d 203, 213 (Del. 2009)).

4

argues now that it was so plainly erroneous that it warrants reversal in the interests of justice.

(8) "We review the denial of a motion for acquittal *de novo* 'to determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt.'"[4] Unpreserved objections to jury instructions are reviewed for plain error.[5] To amount to plain error, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[6] Our review is limited to material defects that are "apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[7] To rise to the level of plain error, an alleged defect "must have affected the outcome of the trial."[8]

(9) Delgado first argues that his convictions for robbery in the first degree and PFDCF should be vacated because "there was no evidence [presented at trial]

---

[4] *Pardo v. State*, 160 A.3d 1136, 1149–50 (Del. 2017) (quoting *Milton v. State*, 67 A.3d 1023, 2013 WL 2721883, at *2 (Del. June 11, 2013) (TABLE)).
[5] *Burrell v. State*, 332 A.3d 412, 432 (Del. 2024).
[6] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).
[7] *Id.*
[8] *Hastings v. State*, 289 A.3d 1264, 1271 (Del. 2023) (quoting *Buckham v. State*, 185 A.3d 1, 19–20 (Del. 2018)) (internal quotation marks omitted).

that [Delgado] was aware that Gibson intended to use the gun during the robbery."[9] We are unpersuaded by this argument.

(10)  Under 11 *Del. C.* § 271(2)(b), a person is liable for the conduct of another when, "[i]ntending to promote or facilitate the commission of the offense[,]" he "[a]ids, counsels or agrees or attempts to aid the other person in planning or committing [the offense]."  And under 11 *Del. C.* § 274, when an offense is divided into degrees, an accomplice is guilty "of an offense of such degree as is compatible with that person's own culpable mental state and with that person's own accountability for an aggravating fact or circumstance."  A person is guilty of robbery in the first degree when, in the course of committing robbery in the second degree,[10] "the person or another participant in the crime . . . [d]isplays what appears to be a deadly weapon . . . ."[11]  So, to prevail, Delgado must show that, viewing the evidence in the light most favorable to the State, no reasonable factfinder could find beyond a reasonable doubt that Delgado was aware that Gibson possessed and intended to display a firearm during the robbery.[12]  Delgado's argument falls short here.

---

[9] Opening Br. at 10.

[10] Since Delgado admits that he would be guilty of robbery in the second degree, we need not discuss the elements of that crime.

[11] 11 *Del. C.* § 832(a), 832(a)(2).

[12] *See Allen*, 970 A.2d at 213; *Clay v. State*, 164 A.3d 907, 914 (Del. 2017).

6

(11) To be sure, the State only presented circumstantial evidence of Delgado's mental state. Specifically, it presented a video recording of the robbery taken by the store's surveillance cameras.[13] But as the Superior Court noted in its bench ruling on Delgado's first motion for judgment of acquittal, and as this Court has held, "[w]e do not distinguish between direct and circumstantial evidence."[14] And "Delaware law allows the state to convict an individual solely on circumstantial evidence."[15] When evaluating a motion for judgment of acquittal, "[w]e treat circumstantial evidence the same as testimonial evidence and draw inferences from that evidence."[16]

(12) The evidence in this case speaks for itself. The jury was shown a video of the entire robbery, and there is no dispute that the men in the video are Delgado and Gibson. The two men enter the store together; at one point in the video, they are shown standing next to each other at the counter and Gibson's gun is clearly visible—only a few feet away from Delgado.[17] Collins recoils when Gibson steps up to the counter gun in hand, and Delgado's head is also turned toward the gun. At no point does Delgado show alarm or surprise at Gibson's display of the gun. In fact, as the gun is first displayed, Delgado moves closer to Gibson. He then steps

---

[13] State's Ex. 2.
[14] *Vincent v. State*, 996 A.2d 777, 779 (Del. 2010).
[15] *Id.*
[16] *Id.*
[17] State's Ex. 2 at 00:00–00:20.

7

behind the counter and begins to steal cigarettes. Though the footage is only circumstantial evidence of Delgado's mental state, a jury could easily infer from this evidence that, from the moment the two men entered the store, Delgado was aware that Gibson possessed and intended to display a firearm in the course of the robbery.

(13) In *Clay v. State*, we addressed a similar argument and reached the same conclusion. In that case, also a store robbery, the defendant argued that the evidence was insufficient to establish his liability as an accomplice to first-degree robbery and PFDCF because "the State did not present evidence that [the defendant] knew that [the principal] possessed a firearm during the robbery."[18] We upheld the defendant's conviction based on a video of the defendant and the principal entering and exiting the store and police testimony that, shortly after the robbery, the defendant made a "throwing motion" while running from them, and that a firearm was recovered near where defendant made the "throwing motion."[19] We found that, viewing this evidence in the light most favorable to the State, this evidence was sufficient for a reasonable jury to find beyond a reasonable doubt that the defendant knew that the principal had a firearm during the robbery.[20]

(14) Delgado's briefing quibbles that merely proving his knowledge that a weapon was displayed by Gibson is insufficient to secure a conviction for first-

---

[18] *Clay*, 164 A.3d at 914.
[19] *Id.*
[20] *Id.*

degree robbery. He argues that even if we find that the State presented evidence sufficient to prove that he knew Gibson was displaying a firearm, it failed to present evidence showing that he knew Gibson intended to use the firearm in the course of the robbery. This argument is without merit. Given the content of the surveillance footage, it is almost inconceivable that a reasonable jury could reach the conclusion that Delgado was *not* aware that Gibson had the intent to use a firearm during the robbery.

(15) As to Delgado's PFDCF conviction, we have held that "[a] defendant, by participating in the robbery, is responsible under Section 271 for the felony-weapons offense which was an integral part of the robbery."[21] In *Cubbage v. State*, we found that "[the defendant] had vicarious accomplice liability despite not personally possessing the weapons because the gun and the bat were used as an integral part of the robbery and [the defendant] participated in planning and committing the robbery."[22] This case is no different. As discussed above, the evidence presented by the State was sufficient to support a conviction for first degree robbery. It follows that the evidence was also sufficient to convict Delgado of the firearm offense that was integral to the robbery. In sum, viewing the evidence presented in the light most favorable to the State, we are convinced that the evidence

---

[21] *Cubbage v. State*, 827 A.2d 30, 2003 WL 21488129, at *3 (Del. June 25, 2003) (TABLE).
[22] *Id.*

9

was sufficient for a reasonable jury to convict Delgado of first-degree robbery and PFDCF.

(16) Delgado next claims that the jury was provided with an incorrect statement of the law of accomplice liability. Though he raised a form of this argument in his motion for a new trial, Delgado concedes that he failed to properly preserve an objection to the jury instructions at the time they were finalized in the Superior Court. We thus review for plain error.[23]

(17) The jury was instructed on the issue of accomplice liability under Section 274 as follows:

> When two or more persons are criminally liable for an offense which is divided into degrees, each person is guilty of an offense of such degree as is compatible with that person's own accountability for an aggravating fact or circumstance.[24]

(18) The Superior Court then explained to the jury the effect of Section 274 on Delgado's robbery charge:

> If you unanimously find beyond a reasonable doubt that there was a principal[/]accomplice relationship between the defendant and another person with respect to the alleged robbery, you must also unanimously decide what degree of robbery is compatible with this defendant's own accountability for the aggravating fact or circumstance of knowingly or intentionally displaying what appeared [to be] a deadly weapon in the course of the commission of the crime regardless of the accountability of any principal for that same aggravating fact or circumstance. In other words, even though you may find that the defendant was an accomplice

---

[23] *Burrell*, 332 A.3d at 432.
[24] App. to Opening Br. at A326.

in the robbery alleged, each accomplice, including the defendant, is not necessarily guilty of robbery in the same degree.[25]

(19)   These instructions, according to Delgado, enabled the jury to "convict him of crimes absent a finding beyond a reasonable doubt of the requisite intent."[26] This argument lacks merit.  The jury was instructed that they could only convict Delgado of the degree of robbery that was "compatible with [Delgado's] own accountability for the aggravating fact or circumstance of *knowingly or intentionally* displaying what appeared to be a deadly weapon *in the course of the commission of the crime*."[27]  This instruction encompasses Delgado's awareness of Gibson's intent to display the weapon in the course of the robbery, and thus the Superior Court did not err in instructing the jury in this manner.

(20)   Delgado repeats this argument for his PFDCF charge.  This argument, too, is unavailing.  As explained above, a person need not actually possess a gun during the commission of a felony to be convicted of PFDCF.  He may be convicted of PFDCF where the gun was possessed by an accomplice during the commission of the felony.[28]  The jury was properly instructed that to convict Delgado it needed to

---

[25] *Id.* at A329–30.
[26] Opening Br. at 17.
[27] App. to Opening Br. at A329 (emphasis added).
[28] *Cubbage*, 2003 WL 21488129, at *3.

11

find beyond a reasonable doubt that Delgado "*knew or was aware* his accomplice was in possession of a firearm during the robbery."[29]

(21)   As mentioned, Delgado did not properly preserve any objection to the jury instructions in the Superior Court.  Hence, we review for plain error.  This means that if there were any error in the jury instructions, such error "must have affected the outcome of the trial."[30]  The weight of the surveillance video evidence, as described above, is crushing.  It is highly unlikely, if not impossible, that a jury, having viewed those images, could conclude that Delgado did not share Gibson's intent to display the gun in the course of the robbery.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[29] App. to Opening Br. at A334 (emphasis added).
[30] *Hastings*, 289 A.3d at 1270 (quoting *Buckham*, 185 A.3d at 19–20).

12